THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:15CV00883 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER |
| STANLEY L. WADE, *et al.* | ) | |
| Defendants. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Both parties in this case have moved for entry of summary judgment pursuant to Fed. R. Civ. P. 56. On December 15, 2015, the United States filed this suit to reduce to judgment the federal income tax liabilities for tax years 1993 through 2004, assessed against Wade, and to foreclose the federal tax liens against his interest in the parcels of real property set forth in the complaint (hereinafter "the Subject Properties"). In March 2004, the Wades were indicted for several tax related crimes and for a 2002 false bankruptcy filing. On March 4, 2005, the Wades filed an affidavit under oath in a Utah court stating "[w]e or certain trusts or business entities legally or equitably owned by us are the owners" of the apartment complexes then purportedly titled in the name of the UBOs or other entities, and at issue in this case. The affidavit also stated "[w]e acknowledge and agree that our family or business entities owned or controlled by our family are the legal and beneficial owners" of the apartment complexes at issue in this case.

On March 21, 2005, Wade was convicted of engaging in a conspiracy to defraud the

United States based on his transfer of the apartment complexes into the UBOs. He was also convicted of three counts of tax evasion for knowingly and willingly signing and submitting federal income tax returns for tax years 1997, 1998, and 1999, omitting at least $4.6 million of taxable income generated from the operation of the apartment complexes at issue here, and one count of tax evasion related to his failure to pay the tax liabilities related to a criminal conviction against him in 1990 with regard to his 1982 and 1983 tax years. Finally, Wade was convicted of two counts related to his 2002 fraudulent bankruptcy filing. *See United States of America v. Wade*, 2:04-cr-0141-TS.

Janet Wade was permitted to enter into a pretrial diversion agreement rather than face trial. Pursuant to the diversion agreement, Janet was required to submit correct tax returns for herself for the years 1993 through 2004, and to pay her half of the resulting tax liabilities. Janet hired an accountant who worked closely for several months with an IRS representative to construct accurate income tax returns for the years 1993 through 2004 which reported half of the rental income from the Subject Properties, and she paid the income tax reported on each of these returns, with the exception of 1993. Using the information reported by Janet on her returns for the years 1993 through 2004, the IRS made federal income tax assessments against Wade for the tax years 1993 through 2004.

In 2011, Wade filed a mandamus proceeding in this Court, *Wade v. Regional Director, Internal Revenue Service*, Civil No. 11-4184, in which he sought an order directing the IRS to withdraw tax liens filed against certain of his properties and to desist from further tax collection efforts with regard to the tax years 1993-2004. The Court granted summary judgment in favor of

the United States and dismissed Wade's suit. *See Wade v. Regional Director*, 504 Fed.Appx. 748 (10th Cir. 2012).

Janet and the entities were named as parties to this action because they may claim an interest in some or all of the Subject Properties. Several defendants with recorded mechanic's liens were named pursuant to 26 U.S.C. ("I.R.C.") § 7403(b). Those defendants have either stipulated that they have no interest in any of the Subject Properties or have been defaulted by the Clerk of this Court. Finally, the United States named Ronald C. Baker as a defendant based on a recorded attorney's lien.

Plaintiffs have four main allegations for which they are seeking summary judgment: (1) the federal tax assessments are entitled to a presumption of correctness; (2) Stanley Wade is liable for the fraud penalty; (3) foreclosure of the federal tax liens against the Subject Properties is proper; and (4) Stanley Wade's income tax liabilities are exempted from the bankruptcy discharge. Defendants assert in their summary judgment motion that the Subject Properties were transferred by gift from Stanley Wade to Janet Wade in 2004 and therefore cannot be subject to Stanley's alleged tax liabilities. The government recorded tax liens against all 19[1] of the Subject Properties and the government seeks to foreclose on the 19 Subject Properties in order to satisfy Stanley's alleged tax liabilities. Janet alleges that Stanley has no ownership interest in the 19 Subject Properties as they were properly gifted to her and she has paid all the taxes owed on them. Defendants further assert that the government's claim of fraudulent transfer of the Subject Properties to Stanley's wife is barred by the statute of limitations.

---

[1] There are technically only nineteen Subject Properties remaining at issue in this case as the twentieth property was sold earlier in this case as permitted by the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986); *Nelson v. Geringer*, 295 F.3d 1082, 1086 (10th Cir. 2002); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Viktus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Once the movant's burden is met by producing evidence which, if uncontroverted, would entitle the movant to judgment as a matter of law, the burden then shifts to the nonmoving party to demonstrate that there are genuine issues for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.574, 586-87 (1986); *Viktus* 11 F.3d at 1539. An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997). Conclusory allegations unsupported by specific factual data are insufficient to create a triable issue of fact so as to preclude summary judgment. *See L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000); *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

# III. ANALYSIS

In their summary judgment motion, the United States asserts that tax assessments made by the IRS are presumed to be correct and that the taxpayer bears the burden of overcoming this presumption. *See United States v. Fior D'Italia Inc.*, 536 U.S. 238, 242-43 (2002). The United States also asserts that the federal tax liabilities were properly assessed against the Defendants and that all notices and demand for payment were properly sent, making the Defendants liable for the unpaid taxes and all additional penalties incurred. The government's position is that this includes the fraud penalty from Wade's transfer of property to alleged sham entities, his failure to cooperate with tax authorities, and the filing of two fraudulent bankruptcies.

The government alleges that the Subject Properties at issue are subject to tax liens and foreclosure because the transfers of the Subject Properties by Wade were fraudulent; and the UBO's and business trusts hold title to the Subject Properties as Wade's nominees. In response, Defendants claim that the Subject Properties did not belong to Stanley during the 2006 tax assessment because he conveyed them to his wife as a gift in 2004. As a result of the alleged gift, Defendants assert that the government does not have a claim against the Subject Properties because the assessments were only against Stanley Wade and not his wife Janet.

Thus, the two central issues in the summary judgment motions are whether Stanley Wade's alleged transfer of ownership through gift of the Subject Properties to his wife Janet Wade was valid and whether the government's claim of fraudulent transfer is time barred by the statute of limitations. Defendants argue that the United States ' foreclosure claims are barred by

the four-year state statute of limitations pursuant to the Utah Uniform Fraudulent Transfer Act (Utah Code Ann. § 25-6-10 (renumbered as § 25-6-305)).

### A. The Gift to Janet

The first argument made by the defendants in their Motion is that the federal tax lien could not attach to the 19 Subject Properties at issue in this case because the IRS had not made an assessment for Stan's federal income tax liabilities for the years 1993 through 2004 prior to the time of the alleged gift to Janet in 2004. However, Stan had outstanding income tax liabilities owing for the years 1993 through 2004 when he allegedly made the gift to Janet. Further, at the time of the alleged gift, valid assessments existed against Stan for tax years 1982 - 1984. *See* U.S. Motion, Fact No. 35 (Doc 162, p. 18).

There is no dispute that, at the time of the alleged "gift" to Janet, valid assessments existed against Stan for tax years 1982 - 1984. *Id*. Those assessments were validated by the Tenth Circuit. Indeed, Stan's failure to pay those assessments formed the basis for one of the counts of the indictment in his second tax evasion conviction. Therefore, the United States was a creditor of Stan at the time of the purported transfer, even if Defendants were correct in their argument concerning the need for an assessment for the 1993 - 2004 taxes. However, Defendants' argument is not correct.

The Internal Revenue Code imposes a duty on all individuals to file tax returns containing self-assessments of their tax liabilities. 26 U.S.C. §§ 1, 61, 6012. Stan intentionally reported only a trivial amount of income on the federal income tax returns he filed for 1993 through 2002, and he failed to file any returns for the tax years 2003 and 2004. *See* Roberts Decl. (Doc 163), ¶ 3, Exhibits 29-37 (Doc 163-1). Stan was criminally convicted twice for

failure to file tax returns reporting his apartment rental income - the first time in 1990 for his 1982 and 1983 tax years and the second time in 2005 for his 1997-1999 tax years.  On March 21, 2005, Stan was convicted of three counts of tax evasion for knowingly and willingly signing and submitting federal income tax returns for tax years 1997, 1998, and 1999 omitting at least $4.6 million of taxable income generated from the operation of the apartment complexes on the Subject Properties at issue here, and one count of tax evasion related to his failure to pay the tax liabilities related to the criminal conviction against him in 1990 with regard to his 1982 and 1983 tax years.

      An assessment is not a prerequisite to a tax liability.  *See United States v. Latham*, 754 F.2d 747, 750 (7th Cir. 1985) (assessment of income taxes owed is not a legal necessity for income tax liability); *Maxwell v. U.S.*, 80 F.Supp. 2d 1352, 1355-56 (N.D. Ga. 1999) (despite the fact that the IRS had made no formal assessment of taxes, the taxpayer properly owed taxes for the years in question).  "Liability for income taxes arises, and in some sense it may be said that they accrue, at the time the gains, profits, and income passed into the hands of the recipient." *Jones v. U.S.*, 97 A.F.T.R. 2d 2006-3075 (D.Colo. 2006) *citing Macatee, Inc. v. United States*, 214 F.2d 717, 720 (5th Cir. 1954).  The Internal Revenue Code expressly requires that the amount of taxes owed be paid without assessment, notice or demand.  The Code provides: "when a return of tax is required under this title or regulations, the person required to make such a return shall, *without assessment or notice and demand from the Secretary*, pay such tax." *Sarnelli v. U.S.*, 78 F. Supp. 2d. 1131, 1133 (D. Nev. 1999) citing 26 U.S.C. § 6151 (emphasis added).

Despite his criminal conviction in June 1990 for failing to report the full amount of his income from the operation of his apartment rental business for the years 1982 and 1983, Stan filed his tax returns for 1993 through 2002 and failed to report the income from his apartment rental business and failed to file returns for the years 2003 and 2004. *See* U.S. Motion, Fact No. 33 (Doc 162, p. 18) and Roberts Decl. (Doc 163), Exhibits 29-37 (Doc 163-1). Beginning in 1992, while still on probation in connection with the 1990 conviction, Stan purported to transfer the ownership of several apartment buildings and properties, as well as several other parcels of property owned either solely or jointly with Janet to a series of so-called "Unincorporated Business Organizations" (hereinafter "UBO"). *See* U.S. Motion, Fact No. 36 (Doc 162 p. 18). In May 1993, Stan was advised by attorney David Black that there is no recognized organization known as a UBO and there was no exception from reporting the income from the apartment complexes. *See* U.S. Motion, Fact No. 161 (Doc 162, p. 39). Thus, despite the fact that the IRS had yet to make a formal assessment of taxes against Stan for the years 1993 through 2004, Stan properly owed taxes for those years.

Defendants are incorrect in arguing that the federal tax liens do not attach to the Subject Properties because there was no formal assessment against Stan in 2004 when he allegedly made the gift to Janet. As set forth above, Stan owed millions of dollars in federal income taxes for the years 1982 through 1984 and for the years 1993 through 2004, and therefore the United States was Stan's creditor in 2004. At the time of the alleged gift, Stan had been convicted of failing to report the full amount of the income from his apartment rental business for the years 1982 and 1983, he still owed federal income tax liabilities for the years 1982 through 1984, he had been advised that the UBOs were fictitious entities and there were no exceptions for reporting the

8

income from his apartment rental business, he knowingly failed to report the rental income on his filed federal income tax returns for the years 1993 through 2002, he failed to file a tax return for the year 2003, and he had just been indicted for the tax related crimes and for filing a false bankruptcy petition in 2002. These are all facts describing a fraudulent transfer.

The Utah Uniform Fraudulent Transfer Act, Utah Code Ann. § 25-6-5(2) (renumbered as § 25-6-202) provides that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." In April 2004, just weeks after being indicted, and owing the United States millions in federal income taxes, Stan transfers by "gift" to Janet all of his assets. Stan's alleged gift to Janet was an intentional action to hinder, delay and defraud the United States and therefore, the alleged gift should be set aside as a fraudulent transfer. The defendants allegation that because there were no federal tax assessments for the years 1993 through 2004 pending at the time of the alleged gift is without merit and provides no basis for summary judgment against the United States.

The defendants maintain that there are no genuine disputes of material facts with regard to the completion of the alleged gift Stan made transferring any and all interest he had in the Subject Properties at issue in this matter to Janet in 2004. Specifically, the defendants maintain that "there are no facts that Janet did not obtain individually from Stan in 2004 ownership of the 20 Subject Properties pursuant to the Gift" *See* Defendants' Motion, p. 11-12. The defendants' allegation is without merit as there are numerous facts that contradict the defendants' assertion of a completed gift.

Pursuant to U.C.A. § 25-5-1, no estate or interest in real property shall be created, granted, assigned, surrendered or declared otherwise than by act or operation of law, or by deed or conveyance in writing described by the party creating, granting assigning, surrendering or declaring the same. In determining whether a document purports to convey an interest in land, the court must "focus [] on the document to see whether it identified the grantor, the grantee, and the interest granted or a description of the boundaries in a manner sufficient to construe the instrument as a conveyance of an interest in land." *Russell v. Thomas*, 999 P.2d 1244, 1247-48 (Utah 2000). The Gift and Abondonement (sic) of All Rights To Janet Wade signed by Stanley Wade did not set forth a description of any of the Subject real Properties at issue in this case. Thus, the document that the defendants purport transferred Stan's interest in the Subject Properties to Janet failed to comply with Utah state law and was an ineffective transfer of an interest in real property.

Moreover, the current title holders for the Subject Properties are the sham UBOs and business trusts created by Stan. The defendants admitted that Cherry Hills UBO is the title holder for the First Property; Cherry Hills Apartments Business Trust is the title holder for the Second, Third, Fourth, Fifth, Sixth, Seventh, Properties; Delmonico Apartments Business Trust is the title holder for the Eighth Property; El Caliente Apartments Business Trust is the title holder for the Ninth Property; Hill Rise Apartments Business Trust is the title holder for the Tenth Property; before the recent sale King Ranch Development LLC was the title holder for the Eleventh Property; La Parisenne Apartments is the title holder for the Twelfth Property; La Parisenne Apartments Business Trust is the title holder for the Thirteenth, Fourteenth, and Fifteenth Properties; Sades Apartments is the title holder for the Sixteenth Property; Shangri La

Apartments Business Trust is the title holder for the Seventeenth Property; Wade Sandy is the title holder for the Eighteenth Property; and Hill Rise UBO is the title holder for the Nineteenth Property. *See* U.S. Motion, Fact Nos. ¶¶ 39-157 (Doc 162, p. 19-38).

Additionally, on March 4, 2005, about a year after the alleged gift, Stan, Janet, and their sons filed an affidavit in a Utah State Court, while Stan was awaiting trial for his second tax evasion conviction. In that affidavit, Stan and his family members stated under oath "[w]e or certain trusts or business entities legally or equitably owned by us are the owners" of the apartment complexes at issue in this case and then purportedly titled in the name of the UBOs or other entities over which he exercised control. The affidavit also stated "[w]e acknowledge and agree that our family or business entities owned or controlled by our family are the legal and beneficial owners" of the apartment complexes at issue in this case. *See* U.S. Motion, Fact No. 184 (Doc 162, p. 46). This affidavit signed by Stan in March 2005 clearly contradicts the alleged gift in April 2004.

Finally, pursuant to K-1s attached to tax returns filed for the years 2006 through 2010 by the Cherry Hills Business Trust, Crestwood Cove Apartments Business Trust, Delmonico Apartments Business Trust, Caliente Apartments Business Trust, Hillrise Apartments Business Trust, La Parisienne Apartments Business Trust and Palisades Business Trust, Stanley Wade had a 50 percent ownership interest in each of these entities, and he received 50 percent of the profits from these businesses. *See* U.S. Motion, Fact No. 190 (Doc 162, p. 48). Thus, there are numerous facts which contradict the defendants' allegation of a completed gift to Janet and therefore, the allegation should be denied. Janet has failed to show that she has any interest in the Subject Properties. As shown above, the alleged gift is without merit, and any interest Janet

11

may have had in the Subject Properties she transferred away in 2001 when the title to the Subject Properties were transferred to the UBOs and the business trusts, the current titleholders. Thus, the Court finds that Janet has failed to show that she has any interest in the Subject Properties.

### B. The Current Titleholders of the Subject Properties are Nominees of Stan

Defendants argue that they are entitled to summary judgment because Stan is not a nominee of the current titleholders of the real property. *See* Defendants' Motion, p. 15. This assertion is based largely on the same flawed arguments regarding the "gift" of his interests in the real property to Janet, as well as a focus on only one of the several factors that courts use in a nominee determination. As demonstrated below, these arguments fail as a matter of law.

The United States is not asserting that Stan is the nominee of the current titleholders. Instead, the United States is asserting that the current titleholders are the nominees of Stan, the delinquent taxpayer. This distinction is important, as it is Stan's liabilities the United States is attempting to reduce to judgment and collect in this case, not the liabilities of the current titleholders.

Defendants' main argument that the nominee analysis is not applicable here is the same argument addressed above - namely, that Stan's "problematic" transfers to the UBOs and business trusts are somehow set aside because Stan gave any interest he had in the real property to his wife. As discussed above, Stan's purported "gift" was not valid under Utah law. Further, Stan has engaged in conduct subsequent to the purported "gift" that are inconsistent with this theory, such as representing himself as the owner of the properties and receiving K-1s indicating that he is a 50% owner of the business trusts and is receiving income from the operation of the apartments. Therefore, this argument fails.

Finally, Defendants argue that the United States cannot demonstrate that Stan fulfilled one of the multiple indicators of nominee status (continuous possession), and therefore they are entitled to summary judgment. This argument also fails. It is well-settled that property held by a taxpayer's nominee is subject to the collection of the taxpayer's tax liability. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977); *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007). Property is held by a nominee when someone other than the taxpayer has legal title, but, in substance, the taxpayer enjoys the benefits of ownership. A third party is the taxpayer's nominee where "the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." *Holman*, 505 F.3d at 1065. Nominee doctrine may be used to collect federal taxes where the nominee is an individual (*Holman*, 505 F.3d 1060; *United States v. Reed*, 168 F. Supp. 2d 1266, 1268-69 (D. Utah 2001)); a corporate entity (*Shades Ridge Holding Co. v. United States*, 888 F.2d 725); or a trust (*United States v. Marsh*, 114 F. Supp. 2d 1036, 1043 (D. Haw. 2000)).

Courts generally look to various factors to determine whether nominee liability exists, including whether (i) the taxpayer exercises dominion and control over the property while the property is in the nominee's name; (ii) the nominee paid little or no consideration for the property; (iii) the taxpayer placed the property in the nominee's name in anticipation of a liability or lawsuit; (iv) a close relationship exists between the taxpayer and the nominee; (v) the taxpayer continues to enjoy the benefits of the property while it is in the nominee's name; and (vi) the conveyance to the nominee is not recorded. *See Holman*, 505 F.3d at 1065 n.1; *Reed*, 168 F. Supp. 2d at 1268-69. *See also Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005).

13

Courts focus on the totality of the circumstances, and no single factor is dispositive. *See Dalton v. C.I.R.*, 682 F.3d 149, 158 (1st Cir. 2012). It is not necessary that the government show that each of these factors is present in any particular case. *See Turk v. IRS*, 127 F.Supp. 2d 1165, 1167 (D. Mont. 2000) (No factor can dispose of the nominee issue by itself, and no factor is necessarily required in order to find nominee status). Perhaps the most significant factor is whether the taxpayer can control the assets at issue. *See Shades Ridge Holding Co.*, 888 F.2d at 728; *United States v. Novotny*, 2001 WL 1673628, at *2 (D. Colo. 2001) ("The critical issue is who has substantial control over the property") (citations omitted), *aff'd*, 71 F. App'x 792 (10th Cir. 2003). *See also United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974) (a lien could be enforced against property where the taxpayer had directed that legal title be placed in a third party's name, observing that "the fact taxpayer exerted dominion and control over the land from 1952 until his death in 1971 is indicative of ownership"). Utah's case law indicates that a party may hold legal title in trust for a beneficial owner. *Holman*, 505 F.3d at 1068, *citing Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 598-60 (Utah 1983 (discussing the doctrine of resulting trusts under Utah law); *McGavin v. Segal*, 189 F.3d 1215, 1217-19 (10th Cir. 1999) (discussing and applying the doctrine of resulting trusts under Utah law); *Taylor v. Rupp*, 133 F.3d 1336, 1341 (10th Cir. 1998) (same).

As set forth above, Stanley Wade admitted that he transferred his interest in the Subject Properties to the current titleholders without full and adequate consideration. *See* U.S. Motion, Fact No. 191 (Doc 162, p. 48). Stanley Wade was the purchaser of all of the Subject Properties and he and Janet Wade transferred the Subject Properties to sham UBOs that Wade created and controlled, which later transferred the properties with the apartment rental complexes to the

14

current title holders (the business trusts). *See* U.S. Motion, Facts Nos. 39-157 (Doc. 162, p. 19-38). These transfers were to avoid reporting and paying the income tax on the income generated by the Subject Properties. *See United States v. Wade*, 203 Fed. Appx. 920, 923 (10th Cir. 2006). Stanley Wade continued to exercise dominion and control over the properties after the transfers as he continued to operate the apartment rental businesses after the transfers. *See* U.S. Motion, Fact No. 159 (Doc 162, p. 39). The transfers occurred in anticipation of the assessment of a federal tax liability, having taken place during the tax years at issue, when Stanley Wade was failing to report the income from the apartment rental businesses. *See* U.S. Motion, Fact No. 9 (Doc 162, p. 8). Finally, Stanley Wade continued as a 50 percent owner of the properties after the transfers to the business trusts and continued to receive distributions to him for half of the proceeds from the apartment rental business as demonstrated by the K-1s showing income to Wade. *See* U.S. Motion, Fact No. 190 (Doc 162, p. 48). Therefore, the titleholders to the Subject Properties hold title as nominees for Stanley Wade, or in the alternative, hold title in a resulting trust for the benefit of Stanley Wade.

### C. Statue of Limitations

The Defendants argue that the United States' foreclosure claims are barred by the four-year state statute of limitations pursuant to the Utah Uniform Fraudulent Transfer Act (Utah Code Ann. § 25-6-10 (renumbered as § 25-6-305)). This argument is without merit.

First, the fact that the United States is proceeding in this suit, in part, under Utah fraudulent conveyance law does not make the statute of limitations set out in Utah Code Ann. § 25-6-10 (§ 25-6-305) applicable to this case. The United States argues it is entitled to use any federal or state law remedies at its disposal to satisfy its unpaid claim for taxes. *United States v.*

*Rodgers*, 461 U.S. 677, 682 (1983); *Leighton v. United States*, 289 U.S. 506 (1933); *Remington v. United States*, 210 F.3d 281 (5th Cir. 2000). In *United States v. Summerlin*, 310 U.S. 414, 416 (1940), the Supreme Court restated the "well settled" rule that "the United States is not bound by state statutes of limitation or subject to the defense of latches in enforcing its rights, "whether it sues in its own courts or in a state court." Consequently, "[w]hen the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *Id*. at 417. The Tenth Circuit has specifically held that in "'a proceeding in court to collect a tax,' the government is 'acting in its sovereign capacity in an effort to enforce rights ultimately grounded on federal law'" and state statutes of limitation do not apply. *See United States v. Holmes*, 727 F.3d 1230, 1234-35 (10th Cir. 2013) (citing *Bresson v. Commissioner*, 213 F.3d 1173 (9th Cir. 2000) (claim extinguishment provisions in the California Uniform Fraudulent Transfer Act do not apply to fraudulent transfer claims brought by the United States to collect tax).

When the United States uses a state law remedy to collect taxes, its ability to do so is not governed or shortened by state procedural rules or state law limitations. Instead, I.R.C. § 6502 and any applicable federal extensions control limitations. *Summerlin.* at 416. "Once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law." *Aquilino v. United States*, 363 U.S. 509, 514 (1960). The ten-year limitations period provided in § 6502(a) for collecting an assessment "governs the extent of time for the enforcement of the tax liability. *See Holmes*, 727 F.3d at 1234-35. As set forth in paragraph 214 of the First Amended Complaint, the assessments for which the United States seeks to collect in this suit were made in

16

2006, 2007, and 2008 and the Complaint was filed in this case on December 15, 2015. Thus, the Complaint was filed within the ten year statute of limitations as provided by §6502 and the defendants' allegation that the statute of limitations has expired is wrong and is denied.

Further, Defendants maintain that the United States did not plead a fraudulent conveyance claim as to Stan's alleged gift of his interest in the Subject Properties to Janet, and even if it had, there are no traditional badges of fraud associated with the making of the alleged gift and therefore, the gift cannot be set aside as a fraudulent transfer.

The United States argues that it did not include in the First Amended Complaint a fraudulent transfer claim with regard to the alleged gift from Stan to Janet because it is the government's position that Stan did not effect a transfer of his interest in the Subject Properties by the alleged gift in 2004 and that the gift did not effect a transfer of his interest in the Subject Properties because it was not properly completed or recorded, and thus fails to meet Utah's statutory requirements for a conveyance. Thus, the question of whether or not the United States needed to bring a fraudulent transfer suit within the required statute of limitations which Defendants cite, also turns on whether or not there was a completed gift.

This Court finds that there was no completed gift of Stan's interest in the Subject Properties to Janet. Further, Stan's transfer of his interest to the UBO's and business trusts was fraudulent and the federal tax liens attached to Stan's interest in the Subject Properties. As to the Bankruptcy, although Wade received a discharge in his bankruptcy, his federal tax liabilities for the years 1993 through 2002, which are the prepetition years, are not discharged pursuant to § 523(a)(1)(c), as Wade filed fraudulent returns for those years. The purpose of the Bankruptcy Code is to provide the honest, but unfortunate, debtor a fresh start. *See Dalton v. IRS*, 77 F.3d

1297, 1299-1300 (10th Cir. 1996). As shown above, Wade is not an honest, but unfortunate, debtor for which the bankruptcy laws were enacted and thus Wade's liabilities for the years 1993 through 2002 are excepted from discharge. Therefore, the federal tax assessments against Stanley Wade should be reduced to judgment and the federal tax liens attached to the Subject Properties should be foreclosed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied and Plaintiff's Motion for Summary Judgment in favor of the United States and against Stanley L. Wade, in the amount of $15,284.932.96[2], plus interest continuing to accrue pursuant to 26 U.S.C. § 6622, for the federal income tax liabilities for the years 1993 through 2004; and foreclosure of the federal tax liens against the Subject Properties is granted.

SO ORDERED.

DATED this  2nd  day of   October  , 2017 .

BY THE COURT: _David Sam_

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT

---

[2] This figure is derived from the United States' calculations and facts set forth in their Motion for Summary Judgment and are incorporated herein.